IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS

DIVISION ____

Ni JUL -2 P 1 35

BY_____

| | | |
|---|---|---|
| KYLE O'KEEFE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2012 CV 362 |
| | ) | |
| LAWRENCE GYMNASTICS ACADEMY, INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAVID SAKUMURA | ) | |
| | ) | |
| Defendant. | ) | |

## PETITION

(Pursuant to Chapter 60 of the Kansas Statutes Annotated)

The Plaintiff, Kyle O'Keefe ("Plaintiff" or "O'Keefe"), for his cause of action against Defendants Lawrence Gymnastics Academy, Inc. ("Defendant" or "LGA") and David Sakumura, alleges and states as follows:

### JURSIDICTION AND VENUE

1.    The Court has personal jurisdiction over the parties and subject matter jurisdiction over this action. On April 20, 2012 Plaintiff filed a charge of discrimination alleging that he was terminated from his employment with Defendant in violation of the ADA. On April 30, 2012, the United States Equal Employment Opportunity Commission issued a Notice of Right to Sue, a true and correct copy of which is attached hereto as "Exhibit A." This action has been filed within ninety (90) days of the issuance of the Notice of Right to Sue.

2.    Venue in the Seventh Judicial District of Kansas (Douglas County) is proper

pursuant to K.S.A. § 60-604, because the cause of action that forms the subject matter of this action arose in Douglas County, Kansas, and Defendants are located and reside in Douglas County, Kansas.

### THE PARTIES

3.      Plaintiff is an individual residing in the Douglas County, Kansas. Plaintiff was employed by Defendant LGA as a cheerleading coach and tumbling instructor from on or about April 2, 2010 until his termination on or about October 10, 2011.

4.      Defendant LGA is a corporation authorized to and conducting business in the State of Kansas, with its principal place of business located at 4930 Legends Drive, Lawrence, Kansas 66049. LGA may be served with summons by serving its resident agent David Sakumura at 1148 Parkside Cir., Lawrence, Kansas 66049.

5.      Defendant David Sakumura is an individual and resident of Douglas County, Kansas, and is the principal employee of Defendant LGA.

### BACKGROUND FACTS

6.      Plaintiff was hired by Defendant LGA as a cheerleading coach and tumbling instructor on or about April 2, 2010, and remained in the employ of LGA until his termination on or about October 10, 2011.

7.      Defendant LGA operates a gymnastics and cheerleading academy located in Douglas County, Kansas. Defendant is an "employer" and a "covered entity" for the purposes of the ADA.

8.      At all times relevant hereto, Plaintiff was qualified to perform the essential job functions of a cheerleading coach and tumbling instructor.

9.      Plaintiff worked approximately sixteen (16) hours a week at the LGA facility as a

cheerleading coach and tumbling instructor.

10.     On or about September 1, 2011, Plaintiff suffered a tear of his anterior cruciate ligament and medial collateral ligament, along with a tear of the posterior horn of the lateral meniscus in his right knee. Plaintiff suffered the injury in the course of his employment with LGA, while spotting an LGA student during a tumbling sequence. The student did not rotate properly during the sequence, and Plaintiff had to lunge over his right knee in order to prevent the student from landing on her head.

11.     Plaintiff filed a claim for workers' compensation with the Kansas Division of Workers Compensation shortly after suffering the knee injury.

12.     Instead of surgery, Plaintiff opted to rehab his knee injury. Plaintiff was given a medical release to return to work by his physician on September 14, 2011. The release stipulated that Plaintiff was cleared to return to work without restriction as long as he wore a protective brace on his right knee at all times.

13.     Plaintiff reported to work at LGA on or about September 16, 2011 prepared to teach an advanced tumbling class. At this time, Plaintiff presented the September 14, 2011 release to LGA's principal, Defendant David Sakumura.

14.     Mr. Sakumura expressed dissatisfaction with Plaintiff's workers compensation claim and stated that as the result of Plaintiff's claim, LGA's workers' compensation insurance premiums would increase. Furthermore, Mr. Sakumura stated that he was concerned about future compensable injuries to LGA employees.

15.     Mr. Sakumura further notified Plaintiff that he was not allowed to coach at LGA until LGA's attorney informed him whether Plaintiff could be restricted from "spotting athletes." As a result, Mr. Sakumura instructed Plaintiff to "take a couple of weeks off."

16.    Plaintiff obtained a second medical release from his doctor, on or about September 22, 2011, clearing Plaintiff to return to work without restriction as long as he wore a protective brace on his right knee at all times.

17.    Plaintiff attempted to return to work after obtaining the September 22, 2011 release. Upon presenting the release to Mr. Sakumura, Plaintiff was informed by Mr. Sakumura that LGA's attorney had opined that LGA could not restrict Plaintiff from "spotting athletes." However, Mr. Sakumura informed Plaintiff that he was not allowed to spot and if he was caught spotting, "there would be consequences."

18.    On or about September 27, 2011, Mr. Sakumura contacted Plaintiff's doctor and requested that Plaintiff be restricted from performing gymnastics related activity. Inexplicably and without further examination, Plaintiff was placed on modified work with "no gymnastics until further notice."

19.    Plaintiff received a third medical release from his doctor on or about October 10, 2011, clearing Plaintiff to return to work without restriction as long as he wore a protective brace on his right knee at all times.

20.    Subsequent to the October 10, 2011 medical release, Mr. Sakumura demoted Plaintiff from his position as cheerleading coach and tumbling instructor. Plaintiff's new position was in effect a low-level supervisor/janitorial position wherein Plaintiff was not allowed to perform the essential functions of his position as cheerleading coach and tumbling instructor.

21.    The low-level supervisor/janitorial position only required Plaintiff to work eight and one-half (8 ½) hours per week. The duties of the low-level/janitorial position consisted of supervising open gym, vacuuming LGA gym floors and cleaning mirrors. Most telling, the hours Plaintiff was given to perform these duties fell during the time of day LGA knew Plaintiff

would be working his other job.

22.     Plaintiff declined to work the hours to which he was assigned.  As a result, Plaintiff was designated an "inactive coach" on the LGA website.

23.     In early November of 2011, Mr. Sakumura and LGA Head Cheerleading Coach sent separate emails to the parents of LGA.  LGA Head Cheerleading Coach's email informed LGA parents that Plaintiff suffered a torn ACL and torn meniscus and would not be cleared to return to instruct at LGA until his workers' compensation claim was closed.

24.     Mr. Sakumura's email was sent two days after LGA Head Cheerleading Coach's email.  Mr. Sakumura's email informed LGA parents that Plaintiff had not accepted his restricted duty hours, and was no longer involved with the LGA competitive cheer squads in any way.

## COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

25.     Plaintiff incorporates paragraphs 1 through 24 as if set forth fully herein.

26.     Plaintiff was terminated because Defendant LGA regarded Plaintiff as having a physical impairment which prevented Plaintiff from performing the essential functions of his employment.

27.     As a direct result of said intentional and discriminatory conduct, Plaintiff has lost wages; his future earning capacity has been impaired; he has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and he has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

28.     Defendants' discriminatory conduct exhibited a willful and/or reckless indifference to Plaintiff's federally protected right to be free from disability discrimination.


## COUNT II – WRONGFUL DISCHARGE

29.     Plaintiff incorporates paragraphs 1 through 24 as if set forth fully herein.

30.     Plaintiff filed a claim for workers' compensation benefits stemming from his right knee injury.

31.     Defendant LGA had full knowledge of Plaintiff's workers' compensation claim.

32.     Shortly after Plaintiff filed a claim for workers' compensation benefits, in response to Plaintiff's claim, Defendant terminated and/or demoted Plaintiff's employment.

33.     Defendant terminated Plaintiff's employment because he engaged in protected activity by exercising his right to seek workers' compensation benefits under Kansas law.

**COUNT III – DEFAMATION**

34.     Plaintiff incorporates paragraphs 1 through 24 as if set forth fully herein.

35.     After Plaintiff was terminated and/or demoted from LGA, Plaintiff began the arduous process of opening his own cheerleading gym in Douglas County, Kansas.  Plaintiff advertised in the community and accepted all students who enrolled in his cheerleading programs.

36.     Defendant Sakumura learned of Plaintiff's burgeoning cheerleading gym and subsequently, in April of 2012, during a meeting with existing parents of LGA, Mr. Sakumura falsely and maliciously communicated to the parents that Plaintiff had had inappropriate relationships with LGA students, while employed at LGA.

37.     Subsequent to the parents meeting, Mr. Sakumura also contacted the manager of Plaintiff's bank through which Plaintiff obtained a loan for his cheerleading gym, the commercial landlord who entered into a lease agreement with Plaintiff effectively leasing Plaintiff a space to operate the cheerleading gym and Plaintiff's investor who was providing additional funds to Plaintiff's gym.  During said contacts, Mr. Sakumura falsely and maliciously

communicated to the bank manager, landlord and investor that Plaintiff was a liar, thief, disloyal, felon and not to be trusted. Specifically, Mr. Sakumura communicated that Plaintiff had had inappropriate relationships with LGA students, while employed with LGA.

38.     Mr. Sakumura knew his statements (set forth in Paragraphs 36 and 37) were utterly false and communicated the false allegations knowingly, intentionally and maliciously with intent to injure Plaintiff without any reasonable justification or excuse.

39.     Moreover, Mr. Sakumura made the false and malicious statements with the intention to destroy the business relationships and goodwill Plaintiff has established in the community.

40.     As a result of Mr. Sakumura's false and malicious statements, LGA parents, Plaintiff's bank manager, commercial landlord and investor believed then, and some continue to believe that Plaintiff had inappropriate relationships with LGA students, while employed with LGA. Consequently, Plaintiff's reputation in the community has been forever tarnished and harmed.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor as follows:

A.     Damages in excess of $75,000.00;

B.     For attorneys' fees and costs;

C.     For pre and post judgment interest; and

D.     For such other relief as is just and equitable under the circumstances

## DEMAND FOR TRIAL BY JURY

Pursuant to K.S.A. § 60-238, Plaintiff respectfully requests trial by jury on all issues triable to a jury.

## VERIFICATION

STATE OF KANSAS )
                              ) ss:

COUNTY OF DOUGLAS )

Kyle O'Keefe, of lawful age, being first duly sworn, upon oath states: I am the Plaintiff above named; I have read the above and foregoing Verified Petition, Request for Injunctive And Other Relief; I am familiar with the contents thereof; and all the statements therein made are true.

                                            Kyle O'Keefe, *Plaintiff*

SUBSCRIBED AND SWORN TO before me on this the 25ᵗʰ day of June, 2012.

                                            *NOTARY PUBLIC*

My Appointment Expires: 02/27/2016

MARCIA DANIEL-BARON
NOTARY PUBLIC
STATE OF KANSAS

PREPARED BY:

Timothy D. Resner, #25064
Frieden, Unrein & Forbes, L.L.P.
555 South Kansas Ave., Suite 303
Topeka, Kansas 66603
Tele:   (785) 354-1100
Fax:   (785) 354-1113
tresner@fuflaw.com
*Attorneys for Plaintiff*